UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMAL J ELLIS,

    Plaintiff,

  v.

WASHINGTON DEPARTMENT OF CORRECTIONS, et al.,

    Defendants.

CASE NO. 3:15-CV-05420-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: October 21, 2016

  The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Plaintiff Jamal J. Ellis, proceeding *pro se* and *in forma pauperis*, initiated this civil rights action on June 22, 2015.[1] Dkt. 7. Presently pending before the Court is Defendants' Motion for Summary Judgment ("Motion"). Dkt. 32.[2]

  The Court concludes Plaintiff has failed to sufficiently rebut Defendants' summary judgment showing regarding his failure to protect and due process claims. The Court also finds

---

[1] Plaintiff was ordered to file a second amended complaint after his Complaint and Amended Complaint were screened pursuant to 28 U.S.C. § 1915. *See* Dkt. 4, 6. Plaintiff filed the Second Amended Complaint on September 21, 2015 and the Court ordered service of the Second Amended Complaint on October 28, 2015. Dkt. 7, 9.

[2] The Motion was filed on behalf of all remaining Defendants in this case: Joiann Miller, Geraldine Newman, Shawn Walker, Karie Rainer, Timothy Thrasher, Timothy Birley, Angela Dame, George Gilbert, and Suzanne Vaillancourt. *See* Dkt. 32.

REPORT AND RECOMMENDATION - 1

1  Plaintiff has failed to state a claim for which relief can be granted as to his equal protection,
2  freedom of expression, and ex post facto claims. Accordingly, the Court recommends the Motion
3  be granted.

**BACKGROUND**

Plaintiff, who is currently incarcerated at Cedar Creek Corrections Center, alleges he assaulted his cellmate after Defendant Newman failed to reassign Plaintiff to a different cell. Dkt. 7. He states he was placed in administrative segregation for 19 months as a result of the assault on his cellmate. *Id*. While in administrative segregation, Plaintiff was required to take classes to rejoin general population. *Id*. He states he was not provided with access to the same education classes as prisoners housed in general population. *Id*. Plaintiff alleges Defendants violated his (1) Eighth Amendment right to be free from cruel and unusual punishment; (2) Fourteenth Amendment right to equal protection; (3) Fourteenth Amendment due process right; (4) right to freedom of expression; and (5) rights under the Ex Post Facto Clause. *Id*. at pp. 3-5. Plaintiff seeks only injunctive relief. *Id.* at p. 6.

Defendants filed the Motion on August 22, 2016. Dkt. 32. In support of the Motion, Defendants submitted the declarations of non-party Pamela Moore and Defendants Newman and Dame and portions of Plaintiff's prison records. Dkt. 33; 33-1; 34; 35. Plaintiff did not file a response to the Motion. However, Plaintiff's Second Amended Complaint was signed under penalty of perjury and is being considered as evidence. Dkt. 7.[3] Defendants did not file a reply.

---

[3] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

REPORT AND RECOMMENDATION - 2

**STANDARD OF REVIEW**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is

"determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477 U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3).

## DISCUSSION

In the Motion, Defendants contend Plaintiff failed to demonstrate (1) an Eighth Amendment violation; (2) a Fourteenth Amendment equal protection violation; (3) a Fourteenth Amendment due process violation; and (4) a First Amendment violation. Dkt. 32. The Court also finds Plaintiff has (5) failed to allege a violation of the Ex Post Facto Clause.

### I.  Failure to Protect (Eighth Amendment Claim)

Plaintiff alleges Defendant Newman, a corrections unit supervisor, violated his Eighth Amendment rights when she failed to protect him from assaulting his cellmate. Dkt. 7, p. 3.

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In cases

1 alleging a constitutional violation based on a failure to prevent harm, the plaintiff must first meet
2 an objective component by showing "he is incarcerated under conditions posing a substantial risk
3 of serious harm." *Id.* at 834; *see Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th
4 Cir. 2010). A plaintiff must also meet a subjective component by showing the prison official
5 acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834; *Helling v.*
6 *McKinney*, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the
7 Eighth Amendment requires an inquiry into the prison officials' state of mind."). "[A] prison
8 official cannot be found liable under the Eighth Amendment . . . unless the official knows of and
9 disregards an excessive risk to inmate health or safety; the official must both be aware of facts
10 from which the inference could be drawn that a substantial risk of serious harm exists, and he
11 must also draw the inference." *Farmer*, 511 U.S. at 832; *see Wallis v. Baldwin*, 70 F.3d 1074,
12 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk he should have
13 perceived but did not," therefore, cannot "be condemned as the infliction of punishment."
14 *Farmer*, 511 U.S. at 838.

15       The evidence shows, on March 10, 2014, Plaintiff assaulted his cellmate, throwing him
16 off a six foot high stair landing. Dkt. 34, Newman Declaration, ¶ 4; 33-1, p. 60. Plaintiff's states
17 he told Defendant Newman he needed to be assigned to a different cell to ensure his safety and
18 the safety of his cellmate. Dkt. 7, p. 3. He also sent kites regarding the request for a different cell.
19 *Id*. Defendant Newman does not recall discussing cell assignments with Plaintiff or receiving a
20 request for a different cell placement. Dkt. 34, Newman Declaration, ¶ 10. There is no evidence
21 Plaintiff suffered any injury as a result of the assault. After the assault, Plaintiff was placed in
22 administrative segregation. *Id*. at ¶ 4.

The evidence fails to show Plaintiff suffered a substantial risk of serious harm. Plaintiff attacked his cellmate, and there is no evidence he suffered any physical injury during the assault. As Plaintiff was the aggressor, he has not shown he faced a substantial risk of serious harm. Further, the evidence fails to show Defendant Newman was aware Plaintiff faced a substantial risk of serious harm. Plaintiff provided a conclusory allegation stating he told Defendant Newman he needed a new cell assignment for his safety. *See* Dkt. 7. There is no evidence showing when Plaintiff spoke to Defendant Newman (if it was before or after Plaintiff assaulted his cellmate) or what information he provided to her regarding the alleged risk of serious harm. Plaintiff's conclusory statement is not sufficient to show Defendant Newman was aware of a substantial risk of serious harm to Plaintiff's safety and failed to act. *See Lujan*, 497 U.S. at 888 (the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); *Celotex*, 477 U.S. at 324 (the nonmoving party must go beyond his or her own pleadings and designate "specific facts showing that there is a genuine issue for trial"); *Horonzy v. Corr. Corp. of Am.*, 2014 WL 3810430, *11 (D. Idaho Aug. 1, 2014) ("Plaintiff must provide meaningful evidence, more than a mere scintilla, that would tend to prove his assertions in order to overcome summary judgment.").

As Plaintiff failed to show he suffered a risk of serious harm and failed to show Defendant Newman was aware of a substantial risk of serious harm, he has failed to rebut Defendants' summary judgment showing as to the Eighth Amendment claim. Accordingly, the Court recommends Defendants' Motion be granted as to Plaintiff's Eighth Amendment claim.

**II.     Equal Protection Violation (Fourteenth Amendment Claim)**

Plaintiff alleges his Fourteenth Amendment equal protection rights were violated when he was denied access to educational classes available to inmates housed in general population.

Dkt. 7. The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To bring a successful equal protection claim, a plaintiff must show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). For this differential treatment to give rise to a claim under 42 U.S.C. § 1983, "one must show intentional or purposeful discrimination." *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir. 1963) (inmate failed to show § 1983 violation in absence of "intentional or purposeful discrimination").

Plaintiff contends his equal protection rights were violated because he was treated differently from general population inmates while he was housed in the Intensive Management Unit ("IMU"). However, an inmate housed in IMU is not similarly situated to general population prisoners. *Larue v. Jurgenson*, 17 F.3d 395, *2 (9th Cir. 1994) (*citing Hemphill v. Kincheloe*, 987 F.2d 589, 591 n. 1 (9th Cir. 1993) (IMU houses inmates who present the greatest threat to orderly and safe operation of the prison, and its special policies and procedures are designed accordingly)). Plaintiff has not alleged he is a member of a protected class or alleged he was treated differently than a similarly-situated individual. Therefore, Plaintiff has failed to state a claim for which relief can be granted. Accordingly, the Court recommends Defendants' Motion be granted as to Plaintiff's equal protection claim.

**III.    Due Process Violation (Fourteenth Amendment Claim)**

In his Second Amended Complaint, Plaintiff alleges his due process rights were violated when he was placed in administrative segregation for 19 months. Dkt. 7.

Pursuant to the Due Process Clause of the Fourteenth Amendment, "no state shall 'deprive any person of life, liberty, or property without due process of law.'" *Toussaint v.*

1  *McCarthy*, 801 F.3d 1080, 1089 (9th Cir. 1986), *overruled on other grounds*, *Sandin v Conner*,

2  515 U.S. 472 (1995). The due process guarantees of the Fourteenth Amendment thus "apply only

3  when a constitutionally protected liberty or property interest is at stake." *Tellis v. Godinez*, 5

4  F.3d 1314, 1316 (9th Cir. 1993).

5        Ordinarily, administrative segregation in and of itself does not implicate a protected

6  liberty interest. *See Sandin*, 515 U.S. at 485-86. However, the ultimate inquiry is whether the

7  confinement imposes an atypical and significant hardship. *See id.* at 483-84; *Serrano v. Francis*,

8  345 F.3d 1071, 1079 (9th Cir. 2003). Determining whether a prison condition is "atypical and

9  significant" requires consideration of the specific facts of each case. *Keenan v. Hall,* 83 F.3d

10  1083, 1089 (9th Cir.1996). Courts consider three guideposts in framing the inquiry: (1) whether

11  the challenged condition mirrored those conditions imposed upon inmates in administrative

12  segregation and protective custody, and thus comported with the prison's discretionary authority;

13  (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's

14  action will invariably affect the duration of the prisoner's sentence. *Serrano*, 345 F.3d at 1078.

15        The evidence shows Plaintiff was placed on Intensive Management Status ("IMS") after

16  assaulting his cellmate on March 10, 2014. Dkt. 34, Newman Declaration, ¶¶ 4-5. IMS is used

17  for "offenders that cannot maintain their behavior and who pose a serious threat to the safety of

18  staff, themselves, and other offenders[;]" it is not a punishment. *Id.* at ¶ 6. To be promoted from

19  IMS, Plaintiff was required to meet behavioral expectations and programming expectations. *Id*.

20  at ¶ 7. Programming for IMS offenders is "designed to help offenders control their anger and

21  resolve issues in an appropriate manner, while also helping them to develop pro-social skills of

22  interaction and communication." *Id*. Plaintiff had a review of his IMS status at least every six

23

24

months from May 2014 until August 2016.[4] *See* Dkt. 33-1. Plaintiff's verified Second Amended Complaint states his placement in administrative segregation was an atypical hardship because Plaintiff was prohibited from being transferred to a lower custody facility, denied educational classes offered in general population, and he did not have a specific timeframe of when he would be released from administrative segregation. Dkt. 7, pp. 3-5.

The evidence fails to show Plaintiff's placement on IMS violated his due process rights. Administrative segregation does not alone implicate a liberty interest. *See May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) ("the Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence"); *Bryant v. Cortez*, 536 F.Supp.2d 1160 (C.D. Cal. 2008) (finding no liberty interest when housed in administrative segregation for 18 months). Further, the loss of educational opportunities does not implicate constitutional concerns. *Baumann v. Arizona Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985). Prisoners also have no liberty interest in their classification status or in being housed in a particular institution. *See Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007); *Gray v. Hernandez*, 651 F. Supp. 2d 1167, 1187 (S.D. Cal. 2009) ("An inmate does not have a liberty interest in being housed at a particular institution[.]"). There is no evidence showing Plaintiff's prison sentence was lengthened as a result of his placement on IMS. Additionally, Plaintiff received some type of review of his placement on IMS at least every six months, which provided him with a timeframe regarding his potential release date from administrative segregation.

The evidence fails to show Plaintiff's placement in IMS or in administrative segregation for 19 months violated his due process rights. *See Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995), *as amended*, 75 F.3d 448 (9th Cir. 1995) (hardship associated with

---

[4] Plaintiff had status reviews on May 5, 2014, May 13, 2014, December 5, 2014, June 15, 2015, December 7, 2015, January 1, 2016, June 20, 2016, and August 10, 2016. *See* Dkt. 33-1.

1  administrative segregation, such as confinement to one's cell for a lengthy period of time, does
2  not violate the Due Process Clause because there is no liberty interest in remaining in general
3  population); *Hewitt v. Helms*, 459 U.S. 460, 467 n. 4 (1983) (a liberty interest does not arise even
4  when administrative segregation imposes "severe hardships," such as "denial of access to
5  vocational, educational, recreational, and rehabilitative programs …"). Therefore, the Court finds
6  Plaintiff failed to show a due process violation based on his confinement in administrative
7  segregation. Accordingly, the Court recommends Defendants' Motion be granted as to Plaintiff's
8  due process claim.

9  **IV.    Freedom of Expression Violation (First Amendment Claim)**

10  Plaintiff "noted" his freedom of expression was violated when he was subjected to
11  programs/classes which were not court ordered. Dkt. 7, p. 4. Plaintiff does not explain how the
12  programs/classes restricted his freedom of speech or expression. *Id*. Further, Plaintiff was
13  required to complete the classes to be released into general population; he does not allege the
14  classes were part of his punishment. *Id.* Plaintiff has not pled any facts showing that his speech
15  or freedom of expression was restricted.  Accordingly, the Court recommends Defendants'
16  Motion be granted as to Plaintiff's freedom of expression claim. *See Jones v. Community*
17  *Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations
18  unsupported by facts are not sufficient to state section 1983 claims).

19  **V.    Ex Post Facto Clause Violation (Article I Constitution)**

20  Plaintiff also alleges Defendants violated the Ex Post Facto Clause when they required
21  Plaintiff to take classes, which were not court ordered, to be released from administrative
22  segregation. Dkt. 7, pp. 4-5. "Article I of the United States Constitution provides that the states
23  may not pass any ex post facto law." *Young v. Weston*, 898 F. Supp. 744, 751 (W.D. Wash.
24

1  1995). "One function of the Ex Post Facto Clause is to bar enactments which, by retroactive
2  operation, increase the punishment for a crime after its commission." *See Garner v. Jones,* 529
3  U.S. 244, 249 (2000) (*citing* U.S. Const. art. I, § 10, cl. 1).

4        Plaintiff does not provide the Court with any laws or statutes which violated the Ex Post
5  Facto Clause. He also does not allege his length of punishment increased. He alleges only that he
6  was required to take classes before he could rejoin general population. Therefore, Plaintiff has
7  not alleged a violation of the Ex Post Facto Clause. *See Stewart v. Lehman*, 129 F. App'x 357,
8  358 (9th Cir. 2005) (participating in an anger management class did not constitute an ex post
9  facto law or otherwise violate the prisoner's due process rights). Accordingly, the Court
10 recommends Plaintiff's ex post facto claim be dismissed.

## CONCLUSION

12       Based on the foregoing, the undersigned recommends Defendants' Motion for Summary
13 Judgment be granted and this case be closed.

14       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have
15 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.
16 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*
17 review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit
18 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on
19 October 21, 2016, as noted in the caption.

20       Dated this 4th day of October, 2016.

                                                            David W. Christel
                                                            United States Magistrate Judge